UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

XAVIER M. MILLER,                          )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )        No. 2:19-cv-00591-JMS-MJD
                                           )
T. STEVENS, et al.                         )
                                           )
                    Defendants.            )

**Order Granting Defendants' Motion for Summary Judgment**

Plaintiff Xavier M. Miller alleges that defendant Sergeant C. Holcomb[1] violated his

constitutional rights by serving him part of his kosher prison meal with a live frog on it. Because

the undisputed evidence would not allow a jury to find that Sergeant Holcomb violated Mr. Miller's

First Amendment rights, the defendants' motion for summary judgment, dkt. [80], is **granted**.

## I.      Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving

party to come forward with specific facts showing that there is a genuine issue for trial."

*Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect

the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42

(7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a

---

[1] The claims against several other defendants have been dismissed—some by the Court at screening and some by Mr. Miller's own motion. *See* dkt. 6 (screening order); dkt. 70 (order granting motion to voluntarily dismiss claims). Two defendants remain, and both seek summary judgment, but Mr. Miller only opposes summary judgment for Sergeant Holcomb. *See* dkt. 87 at 1 ("Plaintiff doesn't dispute the fact that Defendant T. Stevens is entitled to summary judgment.").

reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II.     Undisputed Facts

In July 2019, Mr. Miller was incarcerated at Wabash Valley Correctional Facility. Because Mr. Miller is a Hebrew Israelite, he received kosher meals. Dkt. 81-1 at 12 (Miller Deposition). One morning, Sergeant Holcomb delivered Mr. Miller two breakfast "trays," which are actually foam containers wrapped with plastic cling wrap. *Id.* at 12−13.[2] The "cold tray" contained bread, milk, jelly, butter, and either peanut butter or two boiled eggs. *Id.* at 70. The "hot tray" contained grits. *Id.* at 47.

A few minutes after getting the trays, Mr. Miller called for Sergeant Holcomb and reported that there was a frog in his hot tray. *Id.* at 13−14. When Mr. Miller asked for a new tray, Sergeant Holcomb responded, "I'm going to see what I can do." *Id.* at 15. But Sergeant Holcomb did not retrieve the frog or replace the tray. *Id.* Mr. Miller later refused a lunch tray because he was angry that prison staff had refused him recreation time and had not retrieved the frog from his cell. *Id.* at 66. He did accept his dinner tray. *Id.* at 72.

 Mr. Miller testified that he believes Sergeant Holcomb put the frog in the tray because the prison warden wrote him a letter saying that the officer who served his tray checked it and did not

---

[2] The defendants have filed video evidence that shows Sergeant Holcomb delivering the trays and responding to Mr. Miller's call. *See* dkt. 85. The Court has reviewed the video evidence, and it is consistent with both sides' versions of events.

see a frog. *Id.* at 18. Moreover, Mr. Miller deduces that the frog must have been put in the tray shortly before delivery, because it could not have survived for long in the container with hot grits. *Id.* at 19−20.

Mr. Miller testified at length about what he believed Sergeant Holcomb's motivation was for putting the frog in his tray:

> We've had words before we've I've called him — I've called him some names I'm not going to repeat. You know what I'm saying? Nothing racist or nothing like that, but, you know, curse words, stuff like that.
>
> And, you know, I believe — you know, I believe that he seen that opportunity, you know what I'm saying, like, and at this point — at this point I don't know if he thought it all the way through, if he did do it. I believe he did. But he couldn't have thought it all the way through, you know what I'm saying?
>
> Like, you got to explain if you did this — but you trying to make it seem like I did. You got to explain how I did this. You know what I'm saying? Where did I get this frog from?
>
> But, you know, I believe — I just cussed him out every time he came in. Like, it got to the point where, like, we'll get into it — we'll get into it about some things that he — that I hear him saying over the range to other inmates, you know, because I believe in unity. You know what I'm saying?
>
> And I believe when I see somebody else being done wrong that's behind these doors, as am I, I believe that if they're not going — you know what I'm saying? If — when the COs are being done wrong or being talked to wrong, they're going to group up and they're going to unify. So I believe inmates should unify. So I was speak up for other inmates. You know what I'm saying.
>
> So that's — I kind of brought that on myself, whenever we get into it. But it got to the point where he didn't even have to say nothing. He would just come on the range and the sight of him made me mad. You know what I'm saying? Just because — you know what I'm saying? — the encounters that we've had before. You know what I'm saying?
>
> So I jump out there first, cuss him out for no reason — you know what I'm saying? and call him all out his name. You know, it's just — so I really — I brought that on myself, but it still doesn't warrant you know what I'm saying? — putting no frog in my kosher tray.

Dkt. 81-2 at 38−39.

### III.   Discussion

The Court assumes for summary judgment purposes that Mr. Miller has established a genuine issue of fact as to whether Sergeant Holcomb put the frog in his grits. But even assuming that Mr. Miller could convince a jury of this fact, Sergeant Holcomb is entitled to summary judgment because that act did not violate Mr. Miller's constitutional rights.

### A.   Free Exercise

To survive summary judgment on his free exercise claim, Mr. Miller must identify "evidence from which a jury could reasonably find that the defendant[] personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379−80 (7th Cir. 2016). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 379 (cleaned up). In light of this principle, "forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016). But the denial of an isolated religious meal is "de minimis" and "not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999).

The day of the event, Mr. Miller received an untainted cold kosher breakfast tray with bread, milk, jelly, butter, and either peanut butter or two boiled eggs. Dkt. 81-1 at 70. He was offered and refused—for non-religious reasons—a kosher lunch tray. *Id.* at 66. And he received a kosher dinner tray. *Id.* at 72. There is no evidence that Mr. Miller feared being provided non-kosher meals going forward. Based on this evidence, no reasonable jury could find that the denial of kosher grits forced Mr. Miller to choose between daily nutrition and religious practice. Sergeant Holcomb is therefore entitled to summary judgment on this claim.

## B.     Equal Protection

Mr. Miller alleges that Sergeant Holcomb discriminated against him because of his faith in violation of the Fourteenth Amendment's Equal Protection Clause. To survive summary judgment on this claim, he must point to evidence from which a jury could find that (1) he was a member of a protected class, (2) Sergeant Holcomb treated him differently from a similarly situated member of an unprotected class, and (3) Sergeant Holcomb was motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017).

Mr. Miller has identified no evidence that Sergeant Holcomb was motivated by a discriminatory purpose. On the contrary, his own deposition testimony is that he believes Sergeant Holcomb put the frog in his tray because Mr. Miller "cussed him out" all the time and for no reason. Dkt. 81 2 at 38–39. The fact that Mr. Miller happened to receive kosher trays does not turn Sergeant Holcomb's alleged act of revenge into an Equal Protection Clause violation. Sergeant Holcomb is therefore entitled to summary judgment on this claim.

## IV.     Conclusion

The defendants' motion for summary judgment, dkt. [80], is **granted**. Mr. Miller's motion for sanctions, dkt. [86], which argues only that the motion for summary judgment invites the Court to commit legal error, is **denied**. Final judgment shall now enter.

**IT IS SO ORDERED.**

Date: 12/10/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

XAVIER M. MILLER
201448
WESTVILLE – CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Margo Tucker
INDIANA ATTORNEY GENERAL
margo.tucker@atg.in.gov